**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| DARON COOK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 15-1164-JWL |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income benefits (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding error in the Administrative Law Judge's (ALJ) finding that "there is no medically determinable mental impairment" (R. 18) in this case, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this decision.

**I.      Background**

Plaintiff applied for DIB and SSI benefits, alleging disability beginning November 1, 2007.  (R. 14, 202, 206).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  Plaintiff's sole argument is that the ALJ erred at step two of his consideration in finding that Plaintiff's adjustment disorder is not a medically determinable mental impairment.  (Pl. Brief 10-14).  The court agrees and finds remand is necessary because the error is not harmless.

**II.     Standard of Review**

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## III.  Discussion

As noted above, Plaintiff claims the ALJ erred in finding Plaintiff has no medically determinable mental impairment.  He notes the ALJ recognized that the psychologist who examined Plaintiff at the request of the agency, Dr. Allen, diagnosed Plaintiff with adjustment disorder with anxiety, and that the state agency psychologists who reviewed the record, Dr. Adams and Dr. Schulman, found that Plaintiff had a medically determinable anxiety disorder which was not severe.  (Pl. Brief 11-12).  Plaintiff notes that the ALJ rejected Dr. Allen's diagnosis of adjustment disorder.  Id., at 11.  He argues that the ALJ erroneously discounted Dr. Allen's diagnosis and limitations because they were based on Plaintiff's reports, but that Dr. Allen's opinions were based on such evidence as this court found sufficient to establish a medically determinable impairment in the case of Ireland v. Colvin, No. 14-1012-JWL, 2014 WL 7185008, at *4 (D. Kan. Dec. 16, 2014).  Plaintiff points to other record evidence of medically determinable mental impairments, including an assessment of generalized anxiety disorder (GAD),

depression, sleeplessness, and stress reaction in December 2008 (citing Dr. Field's treatment records, R. 461), a diagnosis by his treating physician, Dr. Worley, in January 2013 of adjustment disorder with depressed mood (citing R. 565-66), and the opinions of Drs. Adams and Schulman that the record showed a medically determinable anxiety disorder (citing R. 92, 108).  (Pl. Brief 12).  Then, Plaintiff argues that the error is not harmless and remand is necessary because in accordance with the step two standard, when the ALJ decided there was no medically determinable mental impairment he was precluded from considering any potential mental limitations in assessing RFC.  Id., at 13 (citing Burroughs v. Colvin, No. 14-1300-JWL, 2015 WL 4599445, at *7 (D. Kan. July 29, 2015)).

Finally, Plaintiff presents an argument that the record evidence demonstrates that his adjustment disorder is a severe impairment within the meaning of the Act.  Id., at 13-14.  But, the error in finding Plaintiff's mental impairment not medically determinable requires remand, and the court is precluded from weighing the evidence regarding severity in the first instance, and from providing an advisory opinion.  Therefore, Plaintiff may make his arguments in this regard to the Commissioner on remand.

The Commissioner argues that the ALJ properly considered the medical source opinions of Dr. Worley, Dr. Fields, Dr. Allen, Dr. Adams, and Dr. Schulman, and (by implication, although not specifically stated in the Commissioner's Brief) properly discounted them.  (Comm'r Br. 7-9).  She argues that the ALJ's evaluation of the medical opinions, the medical evidence, and Plaintiff's own statements constitute substantial

record evidence "supporting the ALJ's conclusion that Plaintiff did not have a medically determinable mental impairment." Id., at 9.  The Commissioner distinguishes Ireland because in that case, the court found that objective medical testing regarding mental impairments had been conducted whereas none had been conducted in this case. Id., at 10 (citing 2014 WL 7185008, at *4).  She argues that Plaintiff's position misunderstands the ALJ's role in a disability case:

> Plaintiff's suggestion that the ALJ was unqualified to evaluate the medical evidence and substituted the ALJ's lay opinion for that of [a] doctor's misses the ALJ's role in a disability case.  An ALJ has an obligation to consider medical evidence throughout the sequential evaluation, which necessarily requires the ALJ to determine whether a claimant has a medically determinable impairment and whether a claimant's subjective complaints are fully credible.

(Comm'r Br. 10) (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525(d), 404.1527, 404.1528, 404.1529, 404.1545(a), 404.1546(c), Pt. 404, Subpt. P, App. 1, 416.920(a)(4)(iii), 416.925(d), 416.927, 416.928, 416.929, 416.945(a), 416.946(c).  She argues that the ALJ properly applied the correct legal standard and determined to accord no weight to Dr. Allen's diagnosis and limitations, and the record evidence supports that determination.  Id.  She argues that the ALJ performed his duty and made his decision "based on 'all of the relevant medical evidence and other evidence,'" and "[e]ven if some contradictory evidence may be found in the record in this case, the issue is not whether Plaintiff's position was supported by substantial evidence, but whether the ALJ's decision was so supported." (Comm'r Br. 11-12).

6

In his Reply Brief, Plaintiff argues that Ireland is on all fours with this case because there "this court found that mental status examinations–such as the one performed by Dr. Allen in this case–constituted objective medical evidence sufficient to establish a medically determinable impairment. (Reply 2) (citing 2014 WL 7185008, at *4). Once again Plaintiff points out the fact that Plaintiff was diagnosed with an adjustment disorder by both Dr. Worley and Dr. Allen, and both Dr. Adams and Dr. Schulman accepted that diagnosis even though they found it was not a severe impairment within the meaning of the Act and regulations. Id., at 3.

### A.     Standard to Evaluate Medically Determinable Impairments

At step two it is Plaintiff's burden to show that he had a severe medically determinable impairment before his date last insured. 20 C.F.R. § 404.1520(a)(4)(ii). The determination at step two is based on medical factors alone, and not vocational factors such as age, education, or work experience. Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003). A claimant must provide medical evidence that he had an impairment and how severe it was during the time he alleges he was disabled. 20 C.F.R. § 404.1512(c). As the regulations note, "[i]f you do not have a severe medically determinable physical or mental impairment . . . we will find that you are not disabled." Id. § 404.1520(c) (emphasis added).

A claimant must show a medically determinable physical or mental impairment resulting from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R.

§ 404.1508. This "impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings," but not by a claimant's statement of symptoms alone. Id. The regulations define signs, symptoms, and laboratory findings. Id. 404.1528. Symptoms are an individual's "description of [his] physical and mental impairment," but the individual's descriptions by themselves "are not enough to establish that there is a physical or mental impairment." Id. at (a) ("Your statements alone are not enough to establish that there is a physical or mental impairment." (emphasis added)). Signs are "anatomical, physiological, or psychological abnormalities which can be observed apart from [the individual's] statements (symptoms)," and they "must be shown by medically acceptable clinical diagnostic techniques.  Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities," and "must also be shown by observable facts that can be medically described and evaluated." Id. at (b).  Laboratory findings are "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques," including psychological tests. Id. at (c).

Limitations attributed to impairments which are medically determinable but are not severe must be considered at later steps in the evaluation, whereas alleged limitations attributable to impairments which are not medically determinable must not be considered at later steps. 20 C.F.R. §§ 404.1508, 404.1523, 416.908, 416.923; see also, Rutherford v. Barnhart, 399 F.3d 546, 554, n.7 (3d Cir. 2005) (to be considered, an impairment must be medically determinable, but need not be "severe"); Gibbons v. Barnhart, 85 F. App'x

88, 91 (10th Cir. 2003) ("the ALJ must consider only limitations and restrictions attributable to medically determinable impairments.") (quotation omitted).

### B.     The ALJ's Findings Regarding Mental Impairments

Here is the ALJ's entire step two discussion regarding mental impairments:

The claimant has also alleged anxiety attacks at hearing, with some isolated complaints of mental symptoms in the record. He has not received any mental health treatment. He has not been prescribed any psychotropic medications. He was not diagnosed with any mental health conditions by his medical providers. Nevertheless, based on his allegations, he was referred for a consultative examination with Molly Allen, Psy.D., in 2012 (Exhibit 5F [(R. 468-72)]).

At that time, the claimant alleged a long history of anxiety, which is not supported by his treatment notes (Exhibit 5F, p.l [(R. 468)]). He also reported a history of anti-depressants, which is also not supported by his treatment notes. During his exam, the claimant was bitter towards law enforcement, and he expressed paranoia (Exhibit 5F, p.2 [(R. 469)]). He also alleged he got distracted through thinking about his legal problems (Exhibit 5F, p.2 [(R. 469)]). Otherwise, his exam was generally unremarkable, including a Mini Mental Status Exam.

Dr. Allen then diagnosed adjustment disorder with anxiety; however, this was based on complaints that are not consistent with the other evidence in this case. Based on his reports of "obsessing" on thoughts, limitations were proposed; however, the undersigned does not find this complaint, or the resulting limitation, credible based on the longitudinal record.

Based on the record, the undersigned finds there is no medically determinable mental impairment.

Carol Adams, Psy.D., provided an opinion on behalf of the State Department of Disability Determinations, indicating a non-severe mental impairment (Exhibits 7 A, 8A [(R. 102-31)]). This was based on Dr. Allen's exam, but, as no supporting evidence was provided and the claimant's claims were not supported by other evidence, the undersigned gives this opinion little weight.

9

> A prior opinion from R.E. Schulman, Ph.D., also on behalf of the State Department of Disability Determinations, received little weight for the same reasons (Exhibits 3A, 4A [(R. 72-99)]).

(R. 18).

### C.   Analysis

The hard part of this case–discerning the parties arguments, considering the ALJ's findings, and laying out the correct legal standard–has been done.  The court's decision is now easy in the circumstances presented here.  Therefore, the court will "cut to the chase."  The ALJ here erred because he overstepped his bounds when he substituted his medical judgment for that of Dr. Allen, Dr. Adams, and Dr. Schulman.  Kemp v. Bowen, 816 F.2d. 1469, 1476 (10th Cir. 1987) (holding that an ALJ "can not interpose his own 'medical expertise' over that of a physician").  The court's decision here is dictated by the decision of Winfrey v. Chater, 92 F.3d 1017, 1022 (10th Cir. 1996).

The Plaintiff in Winfrey had been diagnosed by Dr. Spray with somatoform disorder based, in part, on the Minnesota Multiphasic Personality Inventory-2 (MMPI-2).  Id. 92 F.3d at 1021.  Another psychiatrist, Dr. Dean examined Mr. Winfrey at the request of the Social Security Administration and diagnosed only generalized anxiety disorder and depression.  Id.  Mr. Winfrey's counsel inquired of Dr. Dean regarding the presence of a somatoform disorder, and Dr. Dean responded that he had insufficient information and had made insufficient examination of Mr. Winfrey to adequately corroborate or eliminate the presence of somatoform disorder.  Id.  The ALJ in Winfrey sought the services of a psychiatric expert, Dr. Goodman, at a supplemental hearing, and he

questioned Dr. Spray's diagnosis of somatoform disorder because Dr. Goodman found the presence of physical reasons for Mr. Winfrey's somatic complaints.  Id., at 1022.

Notwithstanding Dr. Spray's diagnosis, the ALJ found that Mr. Winfrey did not have a somatoform disorder for three reasons.  (1) Dr. Goodman's opinion that there were physical reasons for Mr. Winfrey's somatic complaints.  (2) The ALJ's interpretation that Dr. Dean's failure to consider somataform disorder reflected Dr. Dean's belief that such a diagnosis was not warranted.  And, (3) the ALJ's personal opinion that Dr. Spray improperly used the MMPI-2 as a basis for the diagnosis.  Id.

The court rejected each of these reasons because (1) as a non-examining source Dr. Goodman's opinion was not worthy of as much weight as Dr. Spray's opinion; (2) the ALJ's interpretation of Dr. Dean's opinion "is belied by Dr. Dean's own explanation for the absence of a diagnosis;" and (3) "the ALJ clearly overstepped his bounds when he substituted his medical judgment for that of Dr. Spray, by determining that the results of the MMPI-2 test were not an adequate basis on which to make a diagnosis."  Id., 92 F.3d at 1022 (citing Kemp, 816 F.2d at 1476).

Here, the ALJ rejected every diagnosis of a mental impairment contained in the record, and rejected every medical opinion that Plaintiff had a medically determinable mental impairment, and unlike the facts in Winfrey, there was no contrary or equivocal medical opinion in that regard.  The Commissioner attempts to avoid the finding that the ALJ improperly interposed his own "medical" judgment by arguing that there is record evidence that supports the ALJ's finding.  However, the question in deciding whether

there is a medically determinable mental impairment is whether there are signs, symptoms, and laboratory findings to establish that impairment. The fact that an individual's descriptions by themselves are not enough to establish that there is a mental impairment does not mean that the plaintiff's descriptions may not be used in making a diagnosis, especially a psychological diagnosis, because the regulations require that medically determinable impairments be established by signs, symptoms (which are defined as an individual's own description of his mental impairments), and laboratory findings. It was appropriate for Dr. Allen to rely on Plaintiff's description of his own symptoms in diagnosing a medically determinable mental impairment, so long as she also relied on signs, and/or laboratory findings in making her diagnosis.

Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, and must be shown by observable facts that can be medically described and evaluated. Here, Dr. Allen's report demonstrates that she observed, described, and evaluated such psychiatric signs. She observed that "[i]t appears that Mr. Cook may have some paranoia" (R. 468), that Plaintiff "tended to perseverate on his bitterness towards law enforcement," and when he did so "his speech could become rather pressured, and he had to be interrupted so that the interview questions could be worked in," and "the tone of his conversation revealed that he had a certain level of paranoia." (R. 469). Dr. Allen also described Plaintiff's slight struggle on intermediate recall, his writing a sentence fragment when asked to write a sentence, and his judgment issues related to drug use. Id.

As noted above, Dr. Allen's report recorded psychiatric signs and symptoms. It also recorded laboratory findings. The regulations define "laboratory findings" as "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques," including psychological tests. 20 C.F.R. §§ 404.1528(c), 416.928(c). Dr. Allen reported that she administered a Mini-Mental State Exam and that Plaintiff achieved a score of 28 out of 30 on that exam. (R. 469). Such an exam is a psychological test, and as such it constitutes a "laboratory finding" within the meaning of the regulations. Clearly, Dr. Allen's diagnosis of a mental impairment (adjustment disorder with anxiety) rests upon signs, symptoms, and laboratory findings as defined by the regulations. There can be no question this is a medically determinable mental impairment.

The Commissioner's argument that the Mental Status Exam score of 28 out of 30 demonstrates little impairment, goes to the severity, not to the existence, of a medically determinable impairment. In fact, the same can be said of each of the reasons given by the ALJ to discount Dr. Allen's diagnosis. Isolated complaints and no prescriptions for psychotropic medications tend more to show mild impairment rather than no impairment. And, the ALJ's appeal to a contrary longitudinal record rings very hollow in the circumstances of this case. All of the record evidence which relates to mental health suggests that Plaintiff has a medically determinable mental impairment. (R. 92, 108, 461, 468-72, 565-66). The court has not found and neither the Commissioner nor the ALJ cites any record evidence affirmatively suggesting that Plaintiff has no mental health

13

issues. Five acceptable medical sources opined regarding mental health issues. Dr. Allen specifically diagnosed Plaintiff with adjustment disorder. (R. 470). Dr. Fields's and Dr. Worley's treatment records contain assessments of generalized anxiety disorder, or adjustment disorder, respectively, and both Dr. Adams and Dr. Schulman opined that Plaintiff had a medically determinable anxiety disorder. (R. 92, 108, 461, 566). There is simply no contrary medical opinion.

The Commissioner is correct that it is the ALJ's duty to decide whether the evidence demonstrates that Plaintiff has a medically determinable mental impairment. However, when the ALJ makes such a decision in the face of record evidence such as that presented here, which shows signs, symptoms, and laboratory findings demonstrating the presence of a medically determinable impairment, the ALJ's determination is not supported by the record evidence. This court has noted many times that "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same). Here, however there is no possibility of drawing two inconsistent conclusions regarding medically determinable mental impairments. The record evidence simply will not support the ALJ's finding that there is no medically determinable mental impairment in this case.

While the court might imagine that a case may be found where a physician or psychologist has diagnosed an impairment and the Commissioner has properly accorded that diagnosis no weight, this is clearly not that case.  Here, the ALJ erred when he substituted his medical judgment for that of five acceptable medical sources, and decided that Plaintiff has no medically determinable mental impairment.  Moreover, because the ALJ here did not, and could not, consider Plaintiff's mental limitations in assessing RFC, the error was not harmless.  Remand is necessary to correct that error.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent herewith.

Dated this 4th day of April, 2016, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**